# In the
# United States Court of Appeals
## For the Seventh Circuit
_____

Nos. 02-3247 & 02-3485

DOUGLAS KATERINOS,

*Plaintiff-Appellant,*

v.

UNITED STATES DEPARTMENT OF THE TREASURY,
NEIL P. SAARI, GERALD A. ONTKO, et al.,

*Defendants-Appellees.*

_____

Appeals from the United States District Court
for the Eastern District of Wisconsin.
Nos. 99 C 1137 & 01 C 1151—**Lynn Adelman**, *Judge*.

_____

SUBMITTED MARCH 19, 2004[*]—DECIDED MAY 12, 2004

_____


Before RIPPLE, KANNE and DIANE P. WOOD, *Circuit Judges*.

PER CURIAM. We have consolidated these two appeals brought by Douglas Katerinos from separate though related district court cases. In the first, a "reverse discrimination" employment case, Mr. Katerinos appeals from the district court's order granting summary judgment in favor of the

_____

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. P. 34(a)(2).

appellees. In the second, arising tangentially from the first, Mr. Katerinos appeals the dismissal of his claims of retaliatory harassment. We affirm the judgment in the first case and stay the appeal in the second.

### *Katerinos I*

Douglas Katerinos was employed by the IRS as a probationary special agent for approximately six months in 1995. According to his supervisors, Mr. Katerinos's performance during this probationary period fell short of their expectations: he took too long to complete assignments; he improperly reported the hours he worked; and he displayed poor attitude and lack of judgment. By the end of the year, Mr. Katerinos was given the choice to resign or be fired; he chose to resign.

After exhausting his administrative remedies, Mr. Katerinos filed a lawsuit in the district court, alleging that the Department of the Treasury discriminated against him as a white male in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* He alleged that his supervisors set him up to fail by providing inadequate training and resources, and that other employees who committed similar infractions were not equally disciplined. The district court concluded, however, that Mr. Katerinos could neither make out a prima facie case of discrimination nor show that the reason the Department gave for its action was pretextual, as required under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The court therefore granted summary judgment for the Department. Mr. Katerinos filed a post-judgment "objection" to the order of summary judgment, which the court construed as a motion for reconsideration and denied.

In arguing on appeal that summary judgment was inappropriate, Mr. Katerinos faces a major hurdle: because he is alleging reverse discrimination—that is, discrimination against him as a white male—he must demonstrate, as part of his prima facie case, that there are "background circumstances that demonstrate that a particular employer has reason or inclination to discriminate invidiously against whites [or men] or evidence that there is something 'fishy' about the facts at hand." *Phelan v. City of Chicago*, 347 F.3d 679, 684 (7th Cir. 2003) (internal quotation marks omitted). Mr. Katerinos points to only one example of such circumstances: at a training exercise early in his term of employment with the IRS, two female employees climbed onto a government vehicle, danced on top of it and proceeded to "moon" the audience, yet were not disciplined. We fail to see how this episode demonstrates a propensity on the part of the Department to favor women or minorities in its employment practices. Nor has Mr. Katerinos made any showing that the Department's stated reason for asking him to leave—his inadequate job performance—was either baseless or pretextual. *See Haywood v. Lucent Technologies, Inc.*, 323 F.3d 524, 530-31 (7th Cir. 2003) (plaintiff alleging discriminatory termination must show that she was meeting her employer's reasonable job expectations); *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 548 (7th Cir. 2002) (plaintiff must show that employer's proffered reasons for termination are factually baseless or otherwise pretextual). We agree with the district court that Mr. Katerinos failed to make out a prima facie case, and therefore we affirm the order of summary judgment.

### *Katerinos II*

Mr. Katerinos's Title VII case against the Department of the Treasury led, though somewhat indirectly, to a second

case against two department agents. Joel Jurkowski and Sharon Jarosz are special agents for the Treasury Inspector General for Tax Administration. For some reason—it is not entirely clear why—Mr. Katerinos served Jurkowski with a subpoena in the first lawsuit. According to Mr. Katerinos, Jurkowski and Jarosz reacted to this subpoena in a retaliatory fashion by harassing members of Mr. Katerinos's family. Jurkowski and Jarosz say that they were just investigating a complaint from an IRS employee who alleged that Mr. Katerinos—again for reasons that are unclear—fraudulently attempted to obtain information about her husband's suicide. The agents claim that they approached Mr. Katerinos's family in order to locate Mr. Katerinos, whose only known home address was a post-office box.

Whatever their motive, the agents' investigation prompted Mr. Katerinos to request the district court in *Katerinos I* for a restraining order. The court initially told defense counsel to try to stop the agents from bothering Mr. Katerinos and his family, but ultimately the court denied the motion. Mr. Katerinos then filed a separate lawsuit against Jurkowski, Jarosz and several other defendants, alleging retaliation in violation of Title VII and commission of various state-law torts. The case was assigned to the same judge as *Katerinos I*, who, at a hearing on July 19, 2002, dismissed each of the lawsuit's claims and, on July 22, 2002, dismissed the case with prejudice. Eight days later, as in the first case, Mr. Katerinos filed a set of "objections" to the judgment. The court ordered the defendants to respond, but, before any response was submitted, Mr. Katerinos filed a notice of appeal.

Mr. Katerinos now challenges the dismissal of his case, arguing primarily that the district court improperly presided over both cases. The defendants, however, argue that this court is without jurisdiction to address Mr. Katerinos's

challenge because the judgment of the district court is not yet final. Mr. Katerinos's "objections" to the judgment were filed within ten days of its entry, and thus are treated as a motion under Federal Rule of Civil Procedure 59(e) to alter or amend the judgment. *See Charles v. Daley*, 799 F.2d 343, 347 (7th Cir. 1986). Under the Federal Rules of Appellate Procedure, a timely motion under Rule 59(e) suspends the time for appealing, and a notice of appeal filed while such a motion is pending is premature. *See* Fed. R. App. P. 4(a)(4)(B)(i); *Florian v. Sequa Corp.*, 294 F.3d 828, 829 (7th Cir. 2002) (per curiam). Because Mr. Katerinos's self-styled "objections" are pending, this court lacks jurisdiction to entertain this appeal until the district court has ruled on Mr. Katerinos's motion.

This situation raises a practical question: should we dismiss this appeal, as we are generally obliged to do when we find ourselves lacking jurisdiction? *See Square D Co. v. Fastrak Softworks, Inc.*, 107 F.3d 448, 450 (7th Cir. 1997). Under the pre-1993 version of Fed. R. App. P. 4, we would have no choice; the rule then provided that a notice of appeal filed before the disposition of a Rule 59 motion to alter or amend the judgment (among other specified post-judgment motions) would "have no effect," which left courts of appeals with no option but to dismiss any appeal based on such a notice. *See Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 61 (1982) (per curiam). However, this rule created a potential trap for unwary litigants. Not realizing that a new notice of appeal needed to be filed after the disposition of the post-judgment motion, litigants easily could miss the filing deadline and inadvertently forfeit their right to appeal. *See Averhart v. Arrendondo*, 773 F.2d 919, 920 (7th Cir. 1985); Advisory Committee Notes to Fed. R. App. P. 4, 1993 Amendment, Note to Paragraph (a)(4), ¶¶ 1-2; *see also EEOC v. Unión Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 279 F.3d 49, 53-54

(1st Cir. 2002); *Burt v. Ware*, 14 F.3d 256, 259-60 (5th Cir. 1994) (per curiam). The rule therefore was amended in 1993 to provide that a premature notice of appeal is no longer void, but merely suspended; it "becomes effective . . . when the order disposing of the last such remaining motion is entered." Fed. R. App. P. 4(a)(4)(B)(i). *See also United States v. Powers*, 168 F.3d 943, 947-48 (7th Cir. 1999); *Otis v. City of Chicago*, 29 F.3d 1159, 1166 (7th Cir. 1994); 16A Wright et al., Federal Practice & Procedure, § 3950.5 at 221 (3d ed. 1999).

Nevertheless, until a notice of appeal becomes effective, this court lacks jurisdiction. As we noted in *Florian*, 294 F.3d at 829, this sort of jurisdictional defect should be identified as early as possible—ideally before a case proceeds to briefing—so that the appeal may be dismissed. Such an order of dismissal should reflect that the appeal is dismissed as premature and that, although no further notice of appeal is necessary, the appeal cannot be perfected until the disposition of the motion pending in the district court. Once the motion has been decided, the district court should provide notice to the court of appeals. We shall then be able to verify that the judgment is final, that the notice of appeal has become effective and that appellate jurisdiction has vested. Any new issues raised or old issues resolved by the disposition of the post-judgment motion may then be brought to this court's attention, either by the filing of a timely amended notice of appeal or as a motion to withdraw or strike the appeal. *See* Fed. R. App. P. 4(a)(4)(B)(ii); Advisory Committee Notes to Fed. R. App. P. 4, 1993 Amendment, Note to Paragraph (a)(4), ¶¶ 3-4; *see also Life Plus Int'l v. Brown*, 317 F.3d 799, 804-05 (8th Cir. 2003); *United Computer Sys., Inc. v. AT & T Corp.*, 298 F.3d 756, 761 (9th Cir. 2002); *Miles v. Gen. Motors Corp.*, 262 F.3d 720, 722-23 (8th Cir. 2001).

If, as here, the premature notice of appeal is not discovered until significant judicial and attorney resources have

been expended, the court of appeals may choose to stay the appeal until the motion is decided. *See Florian*, 294 F.3d at 829; *Webb v. Clyde L. Choate Mental Health & Dev. Ctr.*, 230 F.3d 991, 995 (7th Cir. 2000); *see also Life Plus Int'l*, 317 F.3d at 804; *Union Pac. R.R. Co. v. Greentree Transp. Trucking Co.*, 293 F.3d 120, 124 (3d Cir. 2002); *United States v. McGlory*, 202 F.3d 664, 668 (3d Cir. 2000) (en banc). The decision to proceed in this manner is discretionary, *see Simmons v. Reliance Standard Life Ins. Co. of Tex.*, 310 F.3d 865, 870 (5th Cir. 2002) (dismissing premature appeal after briefing); *Miller v. Marriott Int'l, Inc.*, 300 F.3d 1061, 1065 (9th Cir. 2002) (same); *Square D Co.*, 107 F.3d at 450-51 (same).

We choose in this case to stay the appeal. In order to prevent this appeal from languishing on the appellate docket, we also order the parties to provide periodic updates every three months concerning the status of the pending motion.

It is so ordered.

No. 02-3247—AFFIRMED

No. 02-3485—STAYED

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*