# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 04-2439

JOHN S. GORE,

*Plaintiff-Appellant*,

v.

INDIANA UNIVERSITY,

*Defendant-Appellee.*

_____

Appeal from the United States District Court for
the Northern District of Indiana, South Bend Division.
No. 3:02-CV-929—**Robert L. Miller, Jr.**, *Chief Judge.*

_____

ARGUED JANUARY 3, 2005—DECIDED JULY 25, 2005

_____

Before BAUER, EASTERBROOK, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* When there are three job openings and a man fills the first position, it is an uphill battle for another man to prove that his gender is the reason why he was not selected. That is the task that John Gore faces in this case. Although Gore is convinced that only invidious reasons could explain Indiana University's refusal to hire him as a lecturer, he needs more than his own conviction. The district court granted summary judgment for the University on Gore's claim of gender bias, and we agree

that he did not demonstrate any genuine issue of material fact that would require a trial. We therefore affirm.

**I**

Gore began teaching entry-level communications courses at the South Bend campus of Indiana University in 1998. In September 2001, the University's Communication Arts Area posted openings for communications lecturers. Gore, who had been working under a series of one-year contracts as an adjunct lecturer, applied for one of these positions, seeking, essentially, to keep his current job. In keeping with its standard policy, the University created a committee to review incoming applications. The committee consisted of three men and two women. After reviewing the candidates, the committee submitted to the University's Affirmative Action Officer (AAO) a list of six potential interviewees. The list included four external candidates and two internal candidates, one of whom was Gore. In the letter to the AAO, the committee noted that it might need the internal candidates to remain as "visiting" lecturers if more positions became available. "If they [were not] interviewed," the Committee wrote, "it could be an awkward situation."

The AAO rejected this reason for including the internal candidates on the list. Her reply to the committee stated: "We are looking for the best candidates for one position— the Communication Arts Lecturer position. The fact that someone works at [the University] is not a valid reason for wanting to include that person in the pool. . . . We ask that you propose a list of the most qualified candidates [based] upon objective job related criteria." With this new directive, the committee submitted three candidates to the AAO, a man and two women. Gore was not on the list. After the AAO approved this new set of candidates, the committee interviewed all three and selected Alec Hosterman.

Hosterman, the only man interviewed, also happened to be the other internal candidate from the committee's original interview list.

When a second lecturer position became available a few months later, the committee returned to the broader pool of candidates and selected Desrene Vernon. The hiring committee chair explained in her deposition that the committee selected Vernon over Gore because Vernon had a master's degree in communications, the subject she would be teaching. Gore had a master's degree, but his was in education leadership, not communications. The committee offered the same rationale for hiring another woman instead of Gore when a third position became available; she had a master's degree in communications, Gore did not.

Gore was upset that he had not been interviewed for any of the three positions. After receiving a right-to-sue letter from the Equal Employment Opportunity Commission, he sued the University, alleging age and gender discrimination. The district court dismissed Gore's age discrimination claim on sovereign immunity grounds. Gore does not appeal this ruling and rightly so. See *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000) (finding that the Age Discrimination in Employment Act was not appropriate legislation to enforce section five of the Fourteenth Amendment and therefore did not abrogate the states' sovereign immunity).

The University moved for summary judgment on Gore's remaining sex discrimination claim at the close of discovery. The district court granted the motion, precipitating this appeal.

## II

Title VII of the Civil Rights Act of 1964 provides that it "shall be an unlawful employment practice for an employ-

er . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). To prevail on his sex discrimination claim, Gore must either show direct evidence of discriminatory motive or intent, or rely on the indirect burden-shifting method outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Gore relies solely on the latter option. Under this approach, a plaintiff must present evidence tending to show: (1) he is a member of a protected class; (2) he applied for, and was qualified for, an open position; (3) the employer rejected him for the position; and (4) the employer filled the position with an individual outside of the plaintiff's protected class, or the position remained vacant. See, *e.g.*, *Bennett v. Roberts*, 295 F.3d 687, 694 (7th Cir. 2002). If the plaintiff can establish these four elements, the defendant has an opportunity to articulate a legitimate, nondiscriminatory reason for its action. If the defendant does so, the burden shifts back to the plaintiff and he must offer evidence showing that the defendant's excuse is pretextual. *Id.* at 694-95.

The district court saw no need to engage in this back-and-forth process, because Gore failed at the very first step of the analysis. Even though Title VII's prohibitions against sex discrimination generally protect men as well as women, see, *e.g.*, *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998) (men); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993) (women), the district court thought that Gore, in the circumstances of this case, was not a member of a class of employees protected by Title VII. We would put the point a little differently: the conventional *McDonnell Douglas* framework is not very helpful for so-called reverse-discrimination cases. Because it "is the unusual employer who discriminates against majority employees," *Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 456-57 (7th Cir. 1999), a

male plaintiff alleging gender discrimination must show something more than the fact that he is gendered. See, *e.g.*, *Katerinos v. U.S. Dep't of Treasury*, 368 F.3d 733, 736 (7th Cir. 2004). This was what we meant in *Phelan v. City of Chicago*, 347 F.3d 679, 684 (7th Cir. 2003), when we said that in cases of reverse discrimination, "the first prong of the *McDonnell* test cannot be used." Rather, the plaintiff in such cases "must show background circumstances that demonstrate that a particular employer has reason or inclination to discriminate invidiously against whites [or men] or evidence that there is something 'fishy' about the facts at hand." *Id.* (internal quotation omitted).

Relying on *Steinhauer v. DeGolier*, 359 F.3d 481, 484 (7th Cir. 2004), Gore argues that we have abandoned this added reverse-discrimination requirement. That case, however, was just one in a line of cases that illustrate the need for flexibility in applying the indirect method of proving discrimination. We noted that "[t]he first element is really a non-issue because everyone is male or female." *Id.* at 484. Similarly, everyone can be identified racially. The objective of the indirect method is to assess whether the plaintiff's race, or gender, or other protected characteristic, affected the employment action in question. We see nothing in *Steinhauer* that implies an overruling of the cases holding that additional steps are needed before an inference of reverse-discrimination can be drawn. Nor is there any hint that *Steinhauer* required reconsideration in *Katerinos*, a case decided after *Steinhauer* in which we applied the added reverse-discrimination burden. See 368 F.3d at 736.

Gore offers nothing to overcome this added burden. There was nothing suspicious about the University's decision not to hire him. Gore himself admitted in his deposition that he had no basis to claim that he was more qualified than the candidates the University hired. A man appointed the hiring committee, which, as we noted, had three men and two women. Particularly because the University hired a

man before it hired the two women, it is hard even to construct a reverse-discrimination story from these events. Gore has not presented any evidence to suggest that the University's hiring process was unusual. He has offered no proof, direct, indirect, or circumstantial, that could lead any trier of fact to conclude that he was the victim of sex discrimination. Without such evidence, his appeal must fail.

### III

For these reasons, we AFFIRM the judgment of the district court.

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*