In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 14-2663

PATRICK NOVAK,

*Plaintiff-Appellant,*

*v.*

BOARD OF TRUSTEES OF SOUTHERN
ILLINOIS UNIVERSITY, *et al.*,

*Defendants-Appellees.*

_____

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:12-cv-00007-JPG-PMF — **J. Phil Gilbert**, *Judge.*

_____

ARGUED DECEMBER 9, 2014 — DECIDED FEBRUARY 10, 2015

_____

Before POSNER, RIPPLE, and KANNE, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Patrick Novak brought this action against Southern Illinois University ("the University") and three of its professors, alleging that he had been terminated from the University's doctoral program in Curriculum and Instruction on the basis of his post-traumatic stress disorder, in violation of section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act. The district court

granted the University's motion for summary judgment.[1] It determined that Mr. Novak had not established a prima facie case of disability discrimination and that, in any event, he had not presented sufficient evidence to show that the defendants' stated reason for terminating him from the program was a pretext for discrimination. Mr. Novak filed a timely appeal.[2] For the reasons set forth in this opinion, we agree with the district court that Mr. Novak cannot show that the reason given by the University for his dismissal was pretextual. On that ground, we affirm the judgment of the district court.

# I

## BACKGROUND

### A.

Mr. Novak was diagnosed with post-traumatic stress disorder ("PTSD") in 2001. That same year, he enrolled as an undergraduate student at the University. Through its office of Disability Support Services, the University provided Mr. Novak with the accommodations that he requested throughout his undergraduate career.

In 2005, Dr. Lynn Smith recommended Mr. Novak for admission into the University's doctoral program in Curriculum and Instruction ("C&I"). The University accepted Mr. Novak into the program. After an initial period of study,

---

[1] The jurisdiction of the district court was premised on 28 U.S.C. §§ 1331 and 1343.

[2] Our jurisdiction is premised on 28 U.S.C. § 1291.

all doctoral students in the C&I program must pass a Preliminary Examination in order to continue and become a candidate for a doctoral degree. The Preliminary Examination consists of three segments, referred to as "Days," each of which covers a different aspect of preparation and study. Days 1 and 2 consist of timed exams, while Day 3 involves an untimed take-home assignment.

In September 2008, upon the advice of his psychologist, Mr. Novak requested and received extra time to complete the Day 1 portion of the exam because of his PTSD. He passed Day 1.

In summer 2009, Mr. Novak took Day 2 and Day 3. Dr. Smith and Dr. Marla Mallette, two of the professors serving on Mr. Novak's doctoral committee, reviewed his Day 2 and Day 3 exam answers, and gave Mr. Novak failing marks on both exams. Both professors provided reasons for failing Mr. Novak on Day 2 and Day 3 based on the content of his exam answers. Mr. Novak was not terminated from the C&I doctoral program at that time, despite the department's rule that two failures would permit dismissal.

In fall 2009, again upon the recommendation of his psychologist, Mr. Novak requested and received the following accommodations based on his PTSD: (1) an opportunity to review his failing exam results, (2) an explanation of why his responses were insufficient, (3) extra time to complete Day 2, (4) the opportunity to meet with an instructor to prepare for retaking the exams, and (5) an opportunity to retake the exams. With these accommodations, Mr. Novak passed Day 2 on his second attempt.

In spring 2010, Mr. Novak retook the Day 3 portion of the exam with the same accommodations he had requested in the fall of 2009.[3] Again, Dr. Smith and Dr. Mallette found his Day 3 answers insufficient and, accordingly, gave Mr. Novak failing marks. Both professors again gave reasons for failing Mr. Novak on Day 3 based on the content of his answers.

Mr. Novak retook Day 3 for a third time in fall 2010, again with the same accommodations that he had requested in the fall of 2009. Dr. Smith and Dr. Mallette again found his Day 3 answers insufficient and awarded failing marks. This time, however, the professors did approve part of his submission—Chapter 1—and only asked him to rewrite the other part—Chapter 2.

In January 2011, Mr. Novak took Day 3 for a fourth time, again with the accommodations that he had earlier requested, plus additional written suggestions from Dr. Mallette to help him prepare. Mr. Novak failed the assignment. Dr. Smith and Dr. Mallette again cited the content of his exam response in the Chapter 2 rewrite as their reason for failing him. Dr. Sharon Shrock, another member of Mr. Novak's doctoral committee, agreed that Mr. Novak had failed the assignment, also citing the content of his exam response. Notably, Dr. Shrock only reviewed Chapter 2 of Mr. Novak's response, and some of her criticisms were that Mr. Novak had omitted parts that, unbeknownst to her, he actually had included in Chapter 1 of his response.

---

[3] The request for additional time was not applicable because Day 3 was an untimed take-home exam.

In their review of Mr. Novak's various Day 3 submissions, Drs. Smith, Mallette, and Shrock did not all give the same reasons for failing Mr. Novak. Following his spring 2011 failure, they met privately with each other to discuss Mr. Novak's performance and also as a group with Mr. Novak to review with him their reasons for his failure.

Given Mr. Novak's repeated failure to pass Day 3, the C&I Department terminated his participation in the doctoral program in spring 2011. The Department offered, however, to convert his doctoral credits into a master's degree, but stated that if Mr. Novak accepted this offer, his credits would no longer be available to apply toward a doctoral degree. Mr. Novak accepted the department's offer and received a master's degree in May 2011.

**B.**

Mr. Novak brought this action in the district court on January 4, 2012, against the University, its College of Education, Dr. Smith, Dr. Mallete, Dr. Shrock, Dr. Janet Fuller, and Dr. Paul Angelis.[4] He alleged that he was terminated from the C&I doctoral program based on his PTSD, in violation of section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*

---

[4] The district court dismissed Mr. Novak's claims against the College of Education, Dr. Fuller, and Dr. Angelis on October 18, 2012. These decisions are not at issue in this appeal.

On April 18, 2012, the district court entered a scheduling and discovery order with a discovery cutoff date of October 15, 2012. In this scheduling order, the court required that Mr. Novak disclose any expert witnesses on or before October 1, 2012. The order also required that the parties file any dispositive motions on or before December 15, 2012.

On November 9, 2012, the magistrate judge conducted a conference about discovery disputes and scheduling matters. The magistrate judge granted the parties' joint oral motion to modify scheduling and discovery. The court's order stated that "[a]ll present deadlines and hearings are stricken."[5] The order then set specific deadlines for discovery and the filing of dispositive motions. Notably, the order made no reference to extending the time for the disclosure of experts.

On May 15, 2013, Mr. Novak again requested that the district court extend the time for the completion of discovery. His motion made no reference to extending the time for the disclosure of experts. On June 18, 2013, the magistrate judge granted Mr. Novak's request and set new deadlines for discovery and the filing of dispositive orders. This order made no reference to extending the time for the disclosure of experts.

On December 16, 2013, the day that discovery in this case was to be completed, Mr. Novak's counsel sent defense counsel two emails purporting to be disclosures of his expert witnesses: Dr. Kevin Wise and Dr. Jerry Becker. The emails attached letters signed by counsel for Mr. Novak, rather than the proposed experts, and contained bulleted lists of the con-

[5] R.24.

tent of their testimony. Neither Dr. Wise nor Dr. Becker submitted a signed, written report on December 16, 2013.

On December 27, 2013, the defendants filed their motion for summary judgment, as well as a motion to exclude Mr. Novak's experts, accompanied by a supporting memorandum and exhibits. In due course, Mr. Novak filed responses to the defendants' motion to exclude and to the defendants' motion for summary judgment. Attached to his response to the motion to exclude were affidavits from Mr. Novak's expert witnesses. The defendants later filed a reply in support of their motion to exclude Mr. Novak's experts, to which Mr. Novak filed a motion to strike.

On April 15, 2014, the magistrate judge granted the defendants' motion to exclude Mr. Novak's experts and denied Mr. Novak's motion to strike the defendants' reply as moot. Mr. Novak sought review of the magistrate judge's order, but the district court adopted the magistrate judge's order. The court also granted, in that same order, the defendants' motion for summary judgment. After the court entered judgment, Mr. Novak filed a timely appeal.

## II

## DISCUSSION

### A.

Mr. Novak first submits that the district court erred in granting the University's motion to exclude his expert witnesses. "We review a trial court's discovery determinations, including the decision to exclude expert testimony, under an

abuse of discretion standard." *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 755 (7th Cir. 2004).

Federal Rule of Civil Procedure 26(a)(2) requires parties to timely disclose their expert witnesses in accordance with any deadlines set by the district court. The rule further requires parties to disclose a "written report," "prepared and signed by the witness," and containing the following:

(i)     a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii)    the facts or data considered by the witness in forming them;

(iii)   any exhibits that will be used to summarize or support them;

(iv)    the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v)     a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi)    a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). Failure to comply with the disclosure requirements of Rule 26(a) results in automatic and mandatory exclusion of the proffered witness "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Mr. Novak's December 2013 disclosure of Dr. Wise and Dr. Becker did not include the information required under Rule 26(a)(2)(B)(i), (iii), (iv), (v), or (vi). Further, Mr. Novak disclosed these witnesses more than one year after the court's October 1, 2012, deadline for expert witnesses. The district court determined that these errors were neither substantially justified nor harmless. The court noted that Mr. Novak had known about these witnesses because he had listed them as potential experts in his May 2012 interrogatory responses. The disclosures were, moreover, so late that defendants had no opportunity to depose Dr. Wise or Dr. Becker, to challenge the admission of their testimony under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), or to identify opposing experts.

Mr. Novak now submits that his December 2013 disclosure was timely because, after initially setting the deadline for expert witness disclosures on October 1, 2012, the court later entered an order on November 9, 2012, stating that "[a]ll present deadlines and hearings are stricken."[6] Mr. Novak further contends that any other deficiencies in his disclosures were harmless because he was in substantial compliance with Rule 26.

---

[6] *Id.*

Both of Mr. Novak's arguments are without merit. His timeliness argument takes the district court's action out of context. Although the court's November 9 order stated that "all" present deadlines were stricken, the remainder of that order—particularly when read in conjunction with the court's earlier April 18, 2012, scheduling order (which the November 9 order modifies)—makes clear that the court was not referring to the deadlines set for the disclosure of expert witnesses. Immediately after this statement, the court's November 9 order set new deadlines for the close of discovery and the filing of dispositive motions. The order made no reference to extending the time for the disclosure of experts. The *only* deadline ever announced by the district court for the disclosure of expert witnesses was in its order of April 18. That order listed *separate* dates for the close of discovery (October 15, 2012) and for the disclosure of expert witnesses (October 1, 2012). The magistrate judge never addressed the expert disclosure date—the one at issue here—in his subsequent order.

The failure of Mr. Novak's disclosures to conform substantially to the requirements of Rule 26 provides an independent basis for the district court's exclusion order. Mr. Novak does not dispute the existence of these deficiencies. Rather, he submits that they were harmless because his disclosures were in substantial compliance with Rule 26(a)(2). He relies on our decision in *Jenkins v. Bartlett*, 487 F.3d 482 (7th Cir. 2007). In *Jenkins*, we determined that a district court had not abused its discretion by allowing for the admission of a party's experts, even though that party's Rule 26(a) disclosure was prepared and signed by the attorney rather than the proffered experts. There, the absence of the witnesses' signatures was the "main defect" in the defend-

ants' disclosure. *Id.* at 488. Because both witnesses later submitted affidavits adopting the contents of the attorney's letter, we determined that the disclosure substantially complied with Rule 26(a) and that any shortcomings in the defendants' disclosure were harmless.

Like the defendants in *Jenkins*, Mr. Novak's expert witnesses have submitted affidavits that appear to remedy most of the substantive deficiencies in Mr. Novak's initial disclosure.[7] Mr. Novak attached these affidavits as exhibits to his response to the defendants' motion to exclude. Nevertheless, this remedial step does not in any way cure Mr. Novak's earlier noncompliance with Rule 26. Unlike the situation in *Jenkins*, where the main deficiency was the absence of signatures, here Mr. Novak's initial disclosure failed to comply with *almost every* requirement of Rule 26(a)(2)(B). Although *Jenkins* indicates that a court may excuse minor errors in a Rule 26(a) disclosure, the case hardly suggests that a district court can, or should, allow parties to make late attempts at remedying a disclosure which is in almost complete noncompliance with Rule 26(a).[8] *Jenkins* cannot be read as condoning disclosures that fall short of Rule 26(a) in significant ways. It was merely a determination, under our highly def-

---

[7] Notably, these affidavits still failed to provide a statement regarding the witnesses' compensation, as required by Federal Rule of Civil Procedure 26(a)(2)(B)(vi).

[8] Unlike the present case, moreover, the defendants' disclosure in *Jenkins v. Bartlett*, 487 F.3d 482 (7th Cir. 2007), although lacking witness signatures, was still timely submitted in accordance with the district court's disclosure deadline. *See id.* at 486.

erential standard of review, that the district court had acted within its discretion.

Mr. Novak's untimeliness and lack of compliance with the substantive provisions of Rule 26 would have placed the University in a very difficult position in preparing its motion for summary judgment. The University had the right to depose the experts and to seek out rebuttal experts, a task that would have been impossible within the time constraints set by the district court. That court therefore acted well within its discretion in refusing to accept Mr. Novak's untimely and incomplete submission.[9]

---

[9] Mr. Novak also contends that the University's reply in support of its motion to exclude his expert witnesses violated Southern District of Illinois Rule 7.1(c). That rule provides, in part, that "[r]eply briefs are not favored and should be filed only in exceptional circumstances" and that the "party filing the reply brief shall state the exceptional circumstances." Local Rule 7.1(c) (emphasis omitted). Mr. Novak contends that the defendants' reply brief should have been stricken because it failed to address the issues that the University said it would address when they sought leave to file a reply.

Mr. Novak's argument need not detain us long. "[D]istrict courts are entitled to considerable deference in the interpretation and application of their local rules." *Hunt v. DaVita, Inc.*, 680 F.3d 775, 780 n.2 (7th Cir. 2012). "[U]nless the district court enforces (or relaxes) the rules unequally as between the parties, the decision to overlook any transgression of the local rules is left to the district court's discretion." *Modrowski v. Pigatto*, 712 F.3d 1166, 1169 (7th Cir. 2013) (alterations omitted) (internal quotation marks omitted). Here, Mr. Novak does not allege that the district court applied Local Rule 7.1(c) in an uneven manner. Accordingly, the district court did not abuse its discretion by denying Mr. Novak's motion to strike.

**B.**

We turn to Mr. Novak's contention that the district court erred in granting summary judgment to the defendants. A district court's grant of summary judgment is reviewed de novo. *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014). In order to make out a prima facie case of discrimination under both the ADA and the Rehabilitation Act, a plaintiff must show: (1) that he suffers from a disability as defined in the statutes, (2) that he is qualified to participate in the program in question, and (3) that he was either excluded from participating in or denied the benefit of that program based on his disability. *Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005). The Rehabilitation Act further requires that a plaintiff show that the program in which he was involved received federal financial assistance. *Id.* at 810 n.2; *see also* 29 U.S.C. § 794(a).

An ADA or Rehabilitation Act plaintiff may prove his case through either direct or indirect proof of discrimination. *Rothman v. Emory Univ.*, 123 F.3d 446, 451 (7th Cir. 1997). Under the direct method, a plaintiff must present either direct evidence of discrimination or circumstantial evidence that creates a "convincing mosaic" of discrimination. *Winsley v. Cook Cnty.*, 563 F.3d 598, 604 (7th Cir. 2009) (internal quotation marks omitted). Under the indirect method, a plaintiff must establish a prima facie case of discrimination by presenting evidence that (1) he is disabled, (2) he is qualified to participate in the program, (3) he suffered an adverse action, and (4) nondisabled students were treated more favorably. *Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 685 (7th Cir. 2014). If the plaintiff can establish a prima facie case, the burden then shifts to the defendant to articulate a legitimate, non-

discriminatory reason for any alleged adverse action toward the plaintiff. *Id.* Upon articulating such a reason, the defendant "is entitled to summary judgment unless the claimant can present sufficient evidence that the [defendants'] proffered reason is a pretext for discrimination." *Steinhauer v. DeGolier*, 359 F.3d 481, 484 (7th Cir. 2004).

As the district court noted, the parties dispute only two of the three elements of the cause of action: whether Mr. Novak was qualified for the doctoral program and whether his exclusion from the program was on the basis of his disability. There is no dispute over whether Mr. Novak suffers from a disability. The district court determined that Mr. Novak's claim failed under both the direct and indirect methods of proof. Because Mr. Novak contends that he should prevail under both methods, we will analyze his claims under both methodologies.

## 1.

Under the direct method, Mr. Novak attempts to prove discrimination by attacking two of the reasons offered by his professors for failing his various Day 3 submissions. First, he attacks Dr. Smith's critique that his Day 3 submissions failed to adequately identify "gaps in the literature" by attempting to show that Dr. Smith had not consistently applied this criterion in grading other students. Second, he points out that Dr. Shrock had made no effort to read his prior Day 3 submissions, and, consequently, had faulted him based on a criterion that he had satisfied in a prior submission. He further notes that neither Dr. Mallette nor Dr. Smith had told Dr. Shrock to read his prior Day 3 submissions.

This evidence is insufficient to support a finding that Mr. Novak was discriminated against because of his PTSD. At the very most, this evidence, if believed by a trier of fact, would show that there were lapses in the professors' assessment methodology that might have resulted in unfairness to Mr. Novak. Any inference of discriminatory intent would be unreasonable in light of the undisputed evidence that the University repeatedly had accommodated his PTSD, and, as the district court put it, had "bent over backward[s] to give him opportunities and assistance beyond those required by department policy" in an effort to help him pass his Preliminary Examination.[10]

Mr. Novak has failed to create a convincing mosaic of evidence from which a reasonable jury could find that the defendants had discriminated against him because of his disability. Accordingly, his claim fails under the direct method.

## 2.

Although we have grave doubts as to whether Mr. Novak can make out a prima facie case of disability discrimination under the indirect method, we will pretermit any definitive discussion of this point because we think it is very clear that he has not established that the reason given by the University and its faculty for his termination from the doctoral program can be characterized as pretextual. *See Steinhauer*, 359 F.3d at 484. We do note, however, that the district court, in determining that there was insufficient evi-

---

[10] R.67 at 13.

dence that Mr. Novak was a qualified individual, relied heavily on the Supreme Court's decision in *Regents of the University of Michigan v. Ewing*, 474 U.S. 214 (1985), a substantive due process case in which the Supreme Court stated that judges may not override a "genuinely academic decision" "unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *Id.* at 225. Courts of appeals have been careful not to import this formulation of the deference owed to academic decisions when analyzing allegations under the discrimination statutes. Although such a formulation rests comfortably in the context of substantive due process analysis, the Supreme Court has noted specifically that such a formulation applies only to "*legitimate* academic decision[s]" and that academic decisions that are discriminatory are not legitimate. *Univ. of Pennsylvania v. EEOC*, 493 U.S. 182, 199 (1990) (emphasis in original); *see also id.* at 190. Our own case law has long acknowledged that "Congress did not intend that institutions of higher learning enjoy immunity from the Nation's antidiscrimination statutes." *Vanasco v. Nat'l-Louis Univ.*, 137 F.3d 962, 968 (7th Cir. 1998); *see also Davis v. Weidner*, 596 F.2d 726, 731 (7th Cir. 1979). Indeed, our recent decision in *Blasdel v. Northwestern University*, 687 F.3d 813 (7th Cir. 2012), carefully deals with this important distinction. *See id.* at 815–17. The distinction between the proper treatment of academic decisions in the discrimination context versus the substantive due process context has been recognized as well by our sister circuits and at least one state jurisdiction. *See Gossett v. Oklahoma ex rel. Bd. of Regents for Langston Univ.*, 245 F.3d 1172, 1181 (10th Cir. 2001); *Wynne v. Tufts Univ. Sch. of Med.*, 932 F.2d 19, 25 (1st Cir. 1991) (en

banc); *Palmer Coll. of Chiropractic v. Davenport Civil Rights Comm'n*, 850 N.W.2d 326, 338–39 (Iowa 2014).

Although the *Ewing* formulation has been determined to be inappropriate in cases based on the Nation's discrimination statutes, we also have recognized, continually, the significant costs associated with "heavy-handed" judicial intrusion into internal academic decisions. *N.R. Doe v. St. Francis Sch. Dist.*, 694 F.3d 869, 873 (7th Cir. 2012). In *Blasdel*, we noted at some length the nature of those costs. *See* 687 F.3d at 815–16. Some are practical; academic judgments often rest on necessarily "subjective judgments about academic potential." *Nat'l-Louis Univ.*, 137 F.3d at 968; *see also Namenwith v. Bd. of Regents of the Univ. of Wisconsin Sys.*, 769 F.2d 1235, 1243 (7th Cir. 1985). Other considerations are rooted in the values of the First Amendment. *See Blasdel*, 687 F.3d at 816 (quoting *Lieberman v. Gant*, 630 F.2d 60, 67 (2d Cir. 1980)); *see also Sweezy v. New Hampshire*, 354 U.S. 234, 263 (1957) (Frankfurter, J., concurring). Academic institutions are in no way exempt from our discrimination laws. Nor are there separate and more lenient standards for them. But, when assessing the evidence in such cases, courts must understand the nature and mission of the institutions and evaluate the evidence accordingly.

We turn now to the matter of pretext. The University and its faculty give a simple, direct reason why Mr. Novak's participation in its doctoral program was terminated: he had failed to pass his preliminary examination—a prerequisite for further participation in the program. To show that this reason is pretextual, Mr. Novak must demonstrate that this reason constitutes a mistruth—a lie on the part of the defendants. "Pretext means…a phony reason for some action.

Thus, the question before us is not whether the [University's] stated reason was inaccurate or unfair, but whether the [University] honestly believed the reasons it has offered to explain the discharge." *Collins v. Am. Red Cross*, 715 F.3d 994, 1000 (7th Cir. 2013) (citations omitted) (internal quotation marks omitted).[11]

Mr. Novak points to several perceived faults in the faculty's methodology. None of those alleged faults suggest anything other than an error in the course of a faculty member's evaluation of the student's work. Any lapse hardly supports the inference that the faculty members were involved in something other than a bona fide professional enterprise throughout the course of their assessment. There is no evidence that the faculty members' grading of Mr. Novak's Preliminary Examination was anything other than an honest, professional evaluation of his potential for the particular program in which he was enrolled. In other words, the evidence of record is insufficient to support a finding that the professors' stated reasons for failing Mr. Novak's various Day 3 submissions were deliberately false—a mask for a decision based on discriminatory grounds.[12] Indeed, the record

---

[11] *See also Widmar v. Sun Chem. Corp.*, No. 13–2313, slip op. at 12 (7th Cir. Nov. 19, 2014); *Bates v. City of Chicago*, 726 F.3d 951, 956 (7th Cir. 2013); *Stockwell v. City of Harvey*, 597 F.3d 895, 901–02 (7th Cir. 2010); *McGowan v. Deere & Co.*, 581 F.3d 575, 581 (7th Cir. 2009); *Perez v. Illinois*, 488 F.3d 773, 777 (7th Cir. 2007).

[12] Mr. Novak does not contend that the Preliminary Examination is an illegitimate or unnecessary requirement of the C&I doctoral program. Nor does Mr. Novak dispute that, under C&I departmental policy, students are subject to expulsion from the doctoral program after twice failing any component of the Preliminary Examination.

here shows that the defendants afforded Mr. Novak many accommodations to ensure that his disability did not interfere with his having a fair opportunity to meet the University's standards for this particular program. On this basis, the district court correctly determined that the University's motion for summary judgment should be granted.[13]

## Conclusion

The judgment of the district court is affirmed.

AFFIRMED

---

[13] Because we have affirmed on the merits, we need not address the University's argument that we ought to affirm because Mr. Novak failed to comply with Rule 30 of the Federal Rules of Appellate Procedure.