In the

# United States Court of Appeals
### For the Seventh Circuit

No. 17-1231

GREGORY L. CRIPE and TAMMY CRIPE,

*Plaintiffs-Appellants*,

*v.*

HENKEL CORPORATION and NATIONAL STARCH & CHEMICAL CO.,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:12CV829-PPS — **Philip P. Simon**, *Judge*.

ARGUED JUNE 2, 2017 — DECIDED JUNE 7, 2017

Before FLAUM, EASTERBROOK, and KANNE, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. While working on his employer's roof, Gregory Cripe was exposed to fumes from PUR-FECT LOK® 834A, a glue made by Henkel Corp. and containing methylene diphenyl diisocyanate (MDI). Gregory and his wife Tammy sued Henkel under the diversity jurisdiction, contending that exposure to MDI had caused both

neurological and psychological problems, which could have been prevented if the adhesive had better warnings. (The Cripes also sued National Starch & Chemical Co., whose liability, if any, derives from Henkel's. We need not mention National Starch again.)

Discovery lasted for more than three years, and at its end Henkel moved for summary judgment. It contended that the evidence would not permit a reasonable jury to find that MDI caused Gregory's ailments—and if MDI did not play a role, then the adequacy of warnings accompanying the glue could not matter. The district court granted this motion, ruling that a toxic-tort claim under Indiana law depends on expert proof of causation, see *Hannan v. Pest Control Services, Inc.*, 734 N.E.2d 674, 682 (Ind. App. 2000), and that the Cripes had not produced any expert evidence on that score. They identified only one expert—Patricia Robinson, a specialist in the language of warnings. But she disclaimed any opinion on causation, which is outside her fields of expertise. That left the plaintiffs with nothing, leading to judgment for Henkel. 318 F.R.D. 356 (N.D. Ind. 2017).

In the district court, and again on appeal, the Cripes insist that six treating physicians are experts and that their views must be considered. True, they had not been disclosed *as* experts under Fed. R. Civ. P. 26(a)(2)(A). But the Cripes insisted that Henkel should have gathered from the fact that Robinson attached the physicians' reports to her own that they would function as experts. The district court was unpersuaded, as are we. Litigants should not have to guess who will offer expert testimony; they need knowledge to conduct their own discovery and proffer responsive experts. That's why failure to comply with Rule 26(a)(2)(A) leads to

the exclusion of expert testimony by a witness not identified as an expert. See Fed. R. Civ. P. 37(c)(1) (exclusion unless the failure is "substantially justified or is harmless"); *Novak v. Board of Trustees*, 777 F.3d 966, 972 (7th Cir. 2015); *Hassebrock v. Bernhoft*, 815 F.3d 334, 341 (7th Cir. 2016). Attaching the report of a fact witness, such as a treating physician, to an expert's report does not turn the fact witness into an expert witness. And the district judge determined that plaintiffs' omission is neither substantially justified nor harmless. That was not an abuse of discretion.

But suppose this is wrong. Rule 26(a)(2) requires more than disclosure of a potential expert's name. The disclosure must be accompanied by a report, which must contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the facts or data considered by the witness in forming them;
>
> (iii) any exhibits that will be used to summarize or support them;
>
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
>
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
>
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). The documents attached to Robinson's report did not contain any of these things.

Most of the physicians' evaluations summarize Gregory Cripe's narration of symptoms and propose a course of treatment. They do not discuss causation. What little is said about causation is unreasoned. For example, Dr. Jennifer S. Knapp states that Gregory has "[c]ognitive disorder second-

ary to toxic encephalopathy" but does not explain why she reached that conclusion. It exemplifies the fallacy *post hoc ergo propter hoc*. Another report, from Drs. R. Brent Furbee and Laura Tormoehlen, states that MDI and other isocyanates are "irritants to the respiratory system … and may provoke asthma exacerbation in susceptible individuals" but does not say what this has to do with Gregory Cripe, who is not complaining of asthma exacerbation. None of the physicians' evaluations contains "a complete statement of all opinions the witness will express and the basis and reasons for them", a list of publications and other qualifications, a list of other cases in which the physician has been an expert, or a statement of the compensation to be paid. In short, none of the physicians has submitted an expert's report. Even those experts not required to provide a written report must furnish "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C)(ii). None of the physicians did that either.

"An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *Mid-State Fertilizer Co. v. Exchange National Bank of Chicago*, 877 F.2d 1333, 1339 (7th Cir. 1989). A bottom line is all we get from any of the physicians' evaluations. By contrast, Henkel provided the district court with a comprehensive evaluation of MDI prepared by the World Health Organization, incorporating risk assessments from governmental bodies in the United States, Japan, and the European Union. WHO, *Diphenylmethane Diisocyanate (MDI)* (Concise International Chemical Assessment Document 27) (2000). The WHO's Assessment concludes that MDI can irritate lung tissues and cause asthma-like symptoms but is not associated with other bad outcomes

in animal studies (of which there have been several) or human epidemiological studies.

The WHO's Assessment is 17 years old and summarizes data from the 1990s and before. More recent work could call its conclusions into question. But none of Gregory Cripe's treating physicians mentioned any such work. One of them did cite to a 1994 publication, but the WHO found that publication not credible (Assessment at 22), and the treating physician did not respond to the WHO's views. Nor has any of the treating physicians suggested a mechanism by which MDI *could* cause the symptoms of which Gregory Cripe complains—sweats, chills, nausea, constant pain, headaches, weight gain, fatigue, dizziness, numbness, accelerated heart beat, stiffness in the neck, sores, anxiety, poor short-term memory, and generally feeling lousy.

You can't beat something with nothing. Henkel provided reasons to think that MDI could not have caused Gregory Cripe's symptoms. He has no contrary evidence. The district court's entry of judgment in Henkel's favor is

AFFIRMED.