**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted December 7, 2020[*]
Decided December 8, 2020

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 20–1969

| | |
|---|---|
| CHEIKH I. SEYE,<br>    *Plaintiff-Appellant*, | Appeal from the United States District<br>Court for the Southern District of Indiana,<br>Indianapolis Division. |
| *v.* | No. 1:17-cv-04384-JPH-MJD |
| THE TRUSTEES OF<br>INDIANA UNIVERSITY,<br>    *Defendant-Appellee*. | James Patrick Hanlon,<br>*Judge*. |

**O R D E R**

Indiana University denied Cheikh Seye tenure after considering, then reconsidering, his candidacy. Seye, who was injured in two car accidents during the review process, sued for retaliation under the Rehabilitation Act, and the district court granted the university's motion for summary judgment. Because Seye did not introduce

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

sufficient evidence based on which a reasonable jury could find that, but for retaliation, he would have been granted tenure, we affirm.

Seye's journey through the university's tenure review process took a winding path. He was hired in 2009 as a tenure-track assistant professor in the medical school's Department of Cellular & Integrative Physiology and scheduled for tenure review in 2014. After a car accident in 2012, he was permitted to apply in 2015 instead. At the first stages of review, the department committee and the chair of the department, Dr. Michael Sturek, recommended against tenure. Seye was permitted to withdraw his dossier and reapply in 2016. In October 2015, the university received a notice of tort claim (a precursor to suit under the Indiana Tort Claims Act) against Sturek for allegedly disclosing confidential medical information in his recommendation to deny tenure. (He wrote that Seye suffered headaches and cognitive decline after his accident.)

In 2016, Seye reapplied for tenure, but he had a second car accident and took several months of medical leave. Review proceeded, and although Sturek recommended approving tenure this time, the relevant committees at the department, medical school, and university-wide levels all voted against tenure, as did Dean Jay Hess of the School of Medicine and Executive Vice-Chancellor Kathy Johnson. Then Nasser Paydar, the chancellor of Indiana University–Purdue University Indianapolis and the final decisionmaker in Seye's case, reviewed his dossier and denied tenure.

In May 2017, Seye grieved this decision to the Faculty Board of Review because not all committees had considered an addendum to his dossier with his most recent publications, and because of Sturek's disclosures. The Board recommended reopening his candidacy based only on the missing addendum, and, in his discretion, Paydar ordered a complete re-review. Seye also filed charges of disability discrimination and retaliation against the University with the Equal Employment Opportunity Commission in May and July 2017. After the agency issued right-to-sue notices in November, Seye filed the present suit under the Rehabilitation Act, 29 U.S.C. § 794, alleging that his tenure application was denied because of disability discrimination and retaliation.

In the meantime, the tenure reconsideration process had begun. This time, Sturek and the department, medical school, and campus-wide committees voted for tenure (by divided votes). Dean Hess again recommended against tenure—a decision Seye says he prematurely conveyed to Chancellor Paydar along with information about the committee votes. Executive Vice-Chancellor Johnson now recommended in favor of Seye. Finally, in April 2018, Paydar decided against tenure, citing Seye's low research

productivity, lack of involvement in graduate student mentorship, and mixed external reviews. This was the only instance in which the vice-chancellor could remember the chancellor voting differently from her on a candidate for tenure.

Seye amended his complaint to challenge the final denial of tenure. He eventually dropped his claim of discrimination, and the University moved for summary judgment on his retaliation claim. The district court granted the University's motion, finding no evidence of a causal connection between any protected activity (whether the EEOC charges, the notice of tort claim, the internal grievance, or the complaint in this case) and the denial of tenure.

Seye appeals, arguing that he submitted sufficient evidence that he was denied tenure because of his notice of tort claim or other protected activity, not the reasons Paydar provided. *See McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 370–71 (7th Cir. 2019). We review the district court's decision de novo, construing all facts and reasonable inferences in Seye's favor. *Guzman v. Brown Cnty.*, 884 F.3d 633, 638 (7th Cir. 2018). For his retaliation claim to withstand summary judgment, Seye needs to show that the evidence as a whole would permit a reasonable factfinder to conclude that a "proscribed factor" caused the denial of tenure. *Lewis v. Wilkie*, 909 F.3d 858, 866–67 (7th Cir. 2018) (citing *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 764–65 (7th Cir. 2016)). He must further show that retaliation for his protected activity was the "but-for" cause of his denial of tenure, not merely a "motivating factor." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).

Seye urges us to treat his 2015 tort claim notice against Dr. Sturek as protected activity under the Rehabilitation Act because it referred to the disclosure of medical information. The district court did not decide the question, but because timing is at issue, we conclude that the October 2015 notice was not protected activity. In it, Seye alleged numerous private harms (such as reputational damage) under Indiana's Tort Claims Act, Ind. Code § 34-13-3-8, but not disability discrimination or anything similar. *See Leitgen v. Franciscan Skemp Healthcare, Inc.*, 630 F.3d 668, 674 (7th Cir. 2011) (complaining about action plaintiff believes in good faith is discriminatory constitutes protected conduct). And the claim did not pertain to Hess or Paydar, whose actions are at issue in this suit. But, in any event, Seye's EEOC charges and this lawsuit are actions upon which he may base a retaliation claim. *Scheidler v. Indiana*, 914 F.3d 535, 540, 544 (7th Cir. 2019); *see also Smith v. Lafayette Bank & Trust Co.*, 674 F.3d 655, 658 (7th Cir. 2012).

Seye next argues that the district court erred in treating Chancellor Paydar as the only relevant decisionmaker because Dean Hess "interfered with [his] tenure process" by having off-the-record conversations with Paydar. But Seye lacks evidence of these purported discussions; his accusation that Hess did more than make a recommendation, as policy requires, is speculative. Even if Hess secretly "harbored a retaliatory motive," he was a "subordinate participant in the tenure process," which involved "numerous layers of review." *Adelman-Reyes v. Saint Xavier Univ.*, 500 F.3d 662, 667 (7th Cir. 2007). "Invidious considerations" on Hess's part would provide only "weak or non-existent" evidence of retaliation by Paydar. *Blasdel v. Northwestern Univ.*, 687 F.3d 813, 817 (7th Cir. 2012); *Adelman-Reyes*, 500 F.3d at 667. Even so, Seye provides no evidence that Hess made his second negative assessment because of the EEOC charges or this lawsuit. *See Redd v. Nolan*, 663 F.3d 287, 295 (7th Cir. 2011).

Seye argues further that the timing of the denial suggests retaliation because Paydar was aware of the EEOC complaints and this lawsuit by February 2018 and denied tenure for the final time in April 2018. But Seye does not demonstrate anything suspicious about this timing. Rather than retaliating at the first opportunity, as Seye alleges, Paydar re-started the entire tenure review process—including soliciting new external reviews—after Seye's EEOC charges. Only at the end of that process, seven months later, was Seye again denied tenure. That Seye filed suit before the re-review ended is insufficient to show that it was the but-for cause of Paydar's decision. *Silk v. Bd. of Trs., Moraine Valley Cmty. Coll., Dist. No. 524*, 795 F.3d 698, 710 (7th Cir. 2015).

Finally, Seye argues that Paydar betrayed a retaliatory motive by giving pretextual reasons for his decision. According to Seye, Paydar's reasons "deviate considerably" from the University's tenure guidelines and "conflict with documents in the record." This effectively asks us to re-evaluate the substance of his application and dossier. Tenure decisions, however, "necessarily rely on subjective judgments about academic potential," and involve assessments of promise as well as qualification. *Vanasco v. National-Louis Univ.*, 137 F.3d 962, 968 (7th Cir. 1998); *see also Sun v. Bd. of Trs. of the Univ. of Ill.*, 473 F.3d 799, 815 (7th Cir. 2007). Here, university policy tasked Paydar with independent review of all subordinate tenure recommendations, and he gave Seye "simple, direct reason[s]" for his decision in terms of those policies. *Novak v. Bd. of Trs. of S. Ill. Univ.*, 777 F.3d 966, 976 (7th Cir. 2015). We will not reassess whether Seye was, as he says, really a productive researcher or whether he mentored enough students. His critiques of the process do not show that Paydar's decision was "anything other than an honest professional evaluation of his potential." *Id.* at 977; *see also Collins v. Am. Red*

*Cross*, 715 F.3d 994, 1000 (7th Cir. 2013) ("[A] plaintiff must show that her employer is *lying*, not merely that her employer is wrong.").

AFFIRMED