NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued May 31, 2022
Decided June 13, 2022

**Before**

MICHAEL Y. SCUDDER, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

No. 21-3176

| | |
|---|---|
| NIGEL NOLL,<br>    *Plaintiff-Appellant*,<br><br>*v.*<br><br>BOARD OF REGENTS OF THE<br>UNIVERSITY OF WISCONSIN<br>SYSTEM, et al,<br>    *Defendants-Appellees*. | Appeal from the United States District<br>Court for the Western District of<br>Wisconsin.<br><br>No. 20-cv-293<br><br>Barbara B. Crabb,<br>*Judge*. |

**O R D E R**

The Americans with Disabilities Act and the Rehabilitation Act protect disabled individuals against discrimination and retaliation. Nigel Noll alleged violations of both statutes after being dismissed from a Ph.D. program at the University of Wisconsin-Madison. When the case reached summary judgment, Noll shouldered an obligation to produce evidence from which a jury could infer a causal link between his acknowledged disabilities and complaint about discrimination and dismissal from the graduate program. The district court concluded that Noll failed to carry this burden. We agree and affirm.

**I**

A

Nigel Noll intended to earn a Ph.D. when he enrolled as a graduate student in the University of Wisconsin-Madison's Department of Educational Psychology in the fall of 2014. And for three years, everything went according to plan: Noll excelled in his classes, worked as a teaching assistant, and did research in a lab run by his advisor, Dr. Haley Vlach.

But the outlook for his Ph.D. candidacy started to change in 2017. Typically, the Department's faculty votes to admit a graduate student into the program only after the student successfully writes and defends a master's thesis. Ideally students do so within three years. Aspirational deadlines in summer and fall 2017 came and went, with Noll sending several underdeveloped drafts of his thesis to Dr. Vlach and another advisor, Dr. Chuck Kalish. By January 2018, both advisors had grown concerned about Noll's halting progress.

In February 2018, Noll met with Drs. Vlach and Kalish and requested an additional two weeks to complete his thesis as he worked to manage a change in his medication. Drs. Vlach and Kalish readily agreed to the extension. Noll did not tell either advisor that the accommodations were related to his long-standing diagnoses for bipolar disorder and ADHD.

Noll eventually completed and defended his thesis in late May 2018. Dr. Vlach met with him after the presentation and informed him that, while he had done a good enough job to earn his master's degree, his thesis lacked clarity and precision and reflected an ongoing struggle to apply theoretical principles to his practical research. Dr. Vlach also told Noll that she had decided to withdraw as his advisor, as she no longer believed she could be an effective academic and career mentor. Dr. Vlach went further and informed Noll of her concern that he would not pass the Ph.D. program's required preliminary examination if he chose to test on topics related to the research he had performed in her lab.

Shortly after this meeting, Noll met with Dr. B. Bradford Brown, chair of the Department of Educational Psychology, and complained that Dr. Vlach had discriminated against him based on his disability. Noll pointed to two decisions that post-dated his disclosure of his disability: the Department's denial of his application for a teaching assistant position for the 2018–2019 academic year and Dr. Vlach's withdrawal

as his advisor. Dr. Brown investigated Noll's concerns and spoke with each member of Noll's thesis committee, but ultimately found no merit to the allegations of disability discrimination.

Dr. Brown then put Noll's ongoing admission to the Ph.D. program to a faculty vote in mid-July 2018. Before the meeting, Dr. Brown helped Noll find a different faculty member willing to serve as his advisor for the remainder of his program. At the meeting—and without saying a word about Noll's disability—Dr. Brown gave the voting faculty an overview of Noll's background and performance in the program. For her part, Dr. Vlach also answered a few specific questions that the faculty had about Noll's academic abilities and offered her own view that he had been slow to learn key concepts and missed important deadlines throughout his first four years in the program. The faculty then voted 12-1 against Noll's continued enrollment in the Ph.D. program. Only thirteen of the fifteen faculty members at the meeting voted, with Dr. Vlach later testifying that she abstained from casting any vote.

B

In 2019, Noll filed suit against the Board of Regents and Drs. Vlach and Brown alleging discrimination and retaliation under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. In its summary judgment opinion and order, the district court dismissed Noll's claims against Drs. Vlach and Brown, explaining that individuals are not proper defendants under either enactment. The district court also entered summary judgment for the Board, concluding that Noll failed to identify any evidence permitting the inference that the Board made any of the challenged decisions because of his disability or in response to his complaint of discrimination.

Noll now appeals.

**II**

A

We begin with two threshold matters that frame the scope of Noll's appeal.

*First*, Noll's claim that Dr. Vlach's decision to withdraw as his academic advisor amounted to disability discrimination is not part of this appeal. The parties litigated this issue in the district court, which thoroughly analyzed it in a well-reasoned decision. In our court, though, Noll's opening brief discussed Dr. Vlach's withdrawal not as a

standalone claim, but instead as part of the larger (and in his view, escalating) sequence of events leading to his dismissal from the Ph.D. program. Because Noll does not press the claim on appeal, it is abandoned.

*Second*, and inversely, Noll tries on appeal to broaden his theory of disability discrimination by urging that his dismissal from the program amounted to an adverse event for purposes of both his discrimination and retaliation claims. But he never advanced that claim and theory of liability in the district court, which analyzed his dismissal solely through a retaliation lens. It is too late in the litigation for Noll to reframe his claims. See, *e.g.*, *Mahran v. Advocate Christ Med. Ctr.*, 12 F.4th 708, 713 (7th Cir. 2021) (explaining that issues raised for the first time on appeal are waived).

B

That leaves just two claims for our review: that the Department of Educational Psychology's failure to hire Noll as a TA for the 2018–2019 academic year constituted disability discrimination, and that the faculty's decision to discharge him from the Ph.D. program reflected retaliation for Noll's complaints about disability discrimination. After taking our own close look at the summary judgment record, we agree with the district court that Noll failed to develop sufficient evidence permitting a jury to find in his favor on either claim.

At summary judgment, a court must "consider all of the evidence in the record in the light most favorable to the non-moving party" and "draw all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 457 (7th Cir. 2020) (internal quotations omitted). But the non-moving party cannot sit back and rest solely on its briefing in opposition for its claims to advance to trial. Rather, "as the now familiar trilogy of 1986 cases from the Supreme Court established, if the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in her favor on a material question, then the court *must* enter summary judgment against her." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (emphasis in original) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986), *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)).

Noll fell short of meeting this evidentiary burden at summary judgment. He insists that his failure to secure a TA position in the Department of Educational Psychology for the 2018–2019 academic year was a product of disability discrimination. The Board accepts that Noll has a diagnosed disability and that his being passed over for this

particular TA position constituted an adverse action. But both the ADA and the Rehabilitation Act, the Board rightly emphasizes, "require[] proof of causation" in disability discrimination claims—"both statutes prohibit discrimination against individuals 'by reason of' the disability, or 'on the basis of' the disability." *A.H. by Holzmueller v. Ill. High Sch. Ass'n*, 881 F.3d 587, 593 (7th Cir. 2018). So to survive summary judgment, Noll had to come forward with evidence sufficient to create a material dispute of fact as to whether, but for his disability, he would have been selected for the TA position. See *id.* at 593–94.

He did not. In May 2018, Dr. Vlach told Noll that the Department of Educational Psychology made TA decisions based on a range of factors, including whether applicants had prior teaching experience and their status in the graduate program. She further explained to Noll that his having fallen behind in the preparation of his master's thesis and prior service as a TA resulted in his being placed on a waitlist for the position.

As Noll views the facts, Dr. Vlach's reference to the timeliness of his progress through the graduate program shows discrimination against him in the TA selection process. On this view, Dr. Vlach accommodated his disability by affording him two extra weeks to complete his thesis, but then turned around and held that extra time against him when he applied for a TA position. In short, Noll sees Dr. Vlach as engaging in a bait-and-switch that amounted to disability discrimination.

The summary judgment record does not support such an inference, even when viewed in the light most favorable to Noll. Noll was nearly an entire year behind schedule in defending his master's thesis by the time he applied for the TA position. His disability accommodation only accounted for two of those approximately fifty-two weeks, and Noll has not offered any evidence that but for the two-week extension the Department would have selected him as a TA.

Even if Noll had done enough to establish a prima facie case of causation, he has not identified any evidence creating a factual dispute about whether the legitimate, non-discriminatory reasons Dr. Vlach and the Board gave for why he was waitlisted—that he had already worked as a TA, that he was in the later stages of his program, and that he had a good history of funding—were pretextual. See, *e.g.*, *Novak v. Bd. of Trs. of S. Ill. Univ.*, 777 F.3d 966, 974, 976 (7th Cir. 2015) (explaining that, to show pretext, a plaintiff "must demonstrate that th[e] reason constitutes a mistruth—a lie on the part of the defendants").

Noll's retaliation claim suffers from the same evidentiary shortcoming. He contends that the faculty's 12-1 vote to discharge him from the Ph.D. program reflected

retaliation for his May 2018 complaint to Dr. Brown about Dr. Vlach's alleged discrimination—a protected activity under both the ADA and the Rehabilitation Act. But here, too, there is a dearth of evidence in the summary judgment record on causation. "To establish a causal relationship between the protected activity and [an adverse action], a plaintiff must show that the decisionmaker was aware of the protected activity at the time the alleged retaliation occurred." *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 124 (7th Cir. 2021) (explaining causation in the related Title VII context).

The parties agree that neither Dr. Vlach nor Dr. Brown disclosed to the Department's faculty that Noll had a disability or sought a two-week extension as an accommodation. And the record is equally clear that Brown did not disclose Noll's discrimination complaint to any faculty member he spoke to while investigating the allegations. Even taking the record evidence in the light most favorable to Noll, then, the district court properly entered summary judgment for the Board on Noll's retaliation claim. The voting faculty could not have been retaliating against Noll for making a complaint they knew nothing about.

Noll's allegations of ADA and Rehabilitation Act discrimination and retaliation needed only be plausible to get to discovery. But by the time his case reached summary judgment, more was required. Rule 56 places a comparatively low evidentiary burden on non-movants opposing summary judgment, but Noll did not carry it as to either his discrimination or retaliation claim. And so we AFFIRM.